UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| DARNELL ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 20-118-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| L. CHANEY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Darnell Anderson was previously incarcerated at the United States Penitentiary (USP) – McCreary in Pine Knot, Kentucky. However, he is now being held at the USP in Atwater, California. Proceeding without a lawyer, Anderson has filed a Complaint with this Court pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). He asserts, among other things, that multiple prison officials fabricated disciplinary charges against him in order to place him in restraints for several hours and used excessive force against him. Anderson claims that each of the defendants violated his Eighth Amendment right preventing cruel and unusual punishment from being inflicted on him, and he seeks money damages.

The defendants have moved to dismiss Anderson's Complaint or, alternatively, for summary judgment. The motion has been fully briefed and is ripe for review by this Court. For the reasons set forth below, the defendants' motion will be granted in part and denied it in part.

## I.

Anderson alleges that, on August 11, 2019, Officer Fuson escorted him to a cell in the special housing unit (SHU) at USP – McCreary.  [*See* Record No. 9 at 2 (citing Record No. 1).] He asserts that he told Fuson that he was afraid of the other inmate in the cell because that inmate had been involved in several fights with prior cellmates.  [*See* Record No. 1 at 4.] Anderson then claims that he refused to enter the cell, but Officer Fuson pushed him inside and closed the door.  [*See id.* at 5.] Officer Fuson and two of his colleagues, Officer D. Gabbard and Lieutenant L. Chaney, then allegedly sought to remove the restraints from Anderson's wrists, but he "refused to submit."  [*Id.*] Anderson says that Officer Gabbard then tried to grab him through the food tray slot in the cell door but was unable to do so.  [*Id.*]

At this point, Anderson claims that the officers opened the cell door and pulled him out.  [*Id.*] Anderson alleges that Lieutenant Chaney then "whispered to [him] that 'this is what happens to people who file on my officers,' a reference to several complaints that [Anderson] had filed against officers in the SHU." [*Id.*] According to Anderson, Officer Gabbard "fabricated an incident report to allege that [Anderson] assaulted him," and, as a result, the officers moved him to a different cell and placed him in four-point restraints for several hours. [Record No. 9 at 2-3] Anderson states the restraints were too tight, causing him shortness of breath and an anxiety attack.  [*See id.* at 3] Nevertheless, Anderson contends that the officers kept him in the restraints for at least seven hours.  [*See id.*]

Anderson then says that two other prison officials, Officer Whitaker and Lieutenant Posey, entered his cell and ordered him "to lay on the bed so that his leg restraints could be removed." [*Id.*] Anderson, however, claims that he was physically unable to lay down "due to the tightness of the weight chain," which the officers refused to loosen.  [*Id.* at 9] Anderson

then alleges that Officer Whitaker approached him, told him "this is going to hurt," grabbed him by his upper body, and placed him on the bed. [*Id.*] Anderson states that "this process was the most excruciating pain throughout this entire ordeal" and that he "felt like razor-wire [was] tearing into his skin." [*Id.*] Anderson then contends that he "was forced to endure this exact same pain all over again upon being lifted from the bed." [*Id.*] Anderson also alleges that, during his time in restraints, he could not retrieve his evening meal and was unable to use the toilet, causing him to urinate on himself. [*See id.*; *see also* Record No. 1 at 14).]

Anderson states that he filed a sensitive administrative remedy request just one week later, complaining about the "staff misconduct" committed by Officer Fuson, Officer Gabbard, and Lieutenant Chaney. [Record No. 1 at 3; No. 1-5 at 2] He claims he filed this request directly with the Bureau of Prisons' (BOP's) Mid-Atlantic Regional Office, consistent with the federal regulations governing sensitive issues. [*See* Record No. 1 at 3-4 (citing 28 C.F.R. § 542.14(d)(1)).] Anderson, however, asserts that he did not receive a response. Thus, Anderson claims that, in January of 2020, shortly after he was transferred from USP – McCreary to USP – Atwater, he filed an appeal with the BOP's Central Office, but that office rejected his submission and directed him to initiate his staff misconduct claims at the institutional level. [*See* Record No. 1 at 6; No. 1-7 at 2; No. 1-9 at 2; No. 9 at 4] While Anderson argues that this decision was incorrect, he says he nevertheless continued to pursue his administrative remedies, both back at his prison and through submissions to other BOP officials. [*See* Record No. 1 at 3-7; No. 1-5 at 2-6; No. 1-6 at 2; and No. 1-8 at 2-3] The status of these subsequent administrative remedy requests, however, is unclear.

Anderson eventually filed this lawsuit against Officer Fuson, Officer Gabbard, Lieutenant Chaney, Officer Whitaker, and Lieutenant Posey. [Record No. 1; No. 9] Anderson

argues that each of the named defendants acted "maliciously and sadistically" [Record No. 1 at 12] and violated his right under the Eighth Amendment. [Record No. 1 at 12; No. 9 at 4]

As noted, the defendants have moved to dismiss Anderson's Complaint or, alternatively, for summary judgment. [Record No. 32] And they have submitted numerous exhibits in support their motion. Their filing includes three sworn declarations, a memorandum prepared for the BOP's files, several completed forms related to the use of restraints in this case, and numerous inmate history and administrative grievance records. [*See* Record No. 32-1 through No. 32-4.] Additionally, they have submitted under seal multiple videos with surveillance footage regarding the alleged incident in question. [*See* Record No. 35] The defendants discuss this evidence in detail and argue: (i) Anderson failed to fully exhaust his administrative remedies; (ii) Anderson's claims are not cognizable in light of the United States Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017); and (iii) Anderson has not demonstrated a constitutional claim. [*See* Record No. 32.]

Anderson initially responded to the defendants' motion by filing several discovery-related requests, including a request for the production of documents [Record No. 38] and multiple motions to compel the disclosure of additional video security footage [Record Nos. 39, 42]. He argued that this evidence would support his version of events. The Court, however, denied Anderson's requests as premature because he had not yet responded to the defendants' dispositive motion, and the Court had not yet entered a scheduling order or otherwise commenced the discovery process. [Record No. 41] That said, the Court granted Anderson two extensions of time to file his response brief [Record Nos. 37, 46], and he eventually lodged his opposition to the defendants' dispositive motion. [*See* Record Nos. 47-50.]

## II.

As an initial matter, the Court will treat the defendants' motion as one seeking summary judgment because they have attached and relied upon declarations, documents, and other evidence extrinsic to the pleadings. *See* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

### A. Exhaustion of Administrative Remedies

The Court will dismiss, without prejudice, Anderson's claims against Officer Whitaker and Lieutenant Posey because he has failed to fully exhaust his administrative remedies with respect to the claims asserted against these defendants. *See Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).

Anderson has filed numerous administrative remedy requests while in prison. [*See, e.g.,* Record No. 32-3] However, he clearly says that "Remedy ID# 1007418-A1 is the *only* remedy number that is relevant to [his] Complaint." [Record No. 50 at 1 (emphasis added)] This was the sensitive administrative remedy request that Anderson first filed with the BOP's Mid-Atlantic Regional Office and then appealed to the BOP's Central Office. In that request, he asserted allegations and claims against Officer Fuson, Officer Gabbard, and Lieutenant Chaney. [*See* Record No. 1 at 3 (discussing his "staff misconduct complaint against Defendants D. Gabbard, A. Fuson, and Special Housing Unit Lieutenant L. Chaney"); *see also* Record No. 1-5 at 2 (saying that the "staff members involved in this incident were Officer D. Gabbard, Officer . . . Fuson, and SHU Lt. Chaney").] There is, however, no indication that Anderson made allegations or claims against Officer Whitaker or Lieutenant Posey.

Anderson appears to concede this point. After all, the defendants specifically argue in their dispositive motion that, according to Anderson, his sensitive request only sought an

administrative remedy regarding the alleged actions of Officer Fuson, Officer Gabbard, and Lieutenant Chaney.  [*See* Record No. 32-1 at 16.]  In response, Anderson seems to agree, acknowledging that "he provided a[ ] detailed narrative of Defendants Chaney, Fuson, and Gabbard's misconduct" and requested that "appropriate actions . . . be taken against *those* Defendants."  [Record No. 50-1 at 8 (emphasis added)]  In short, Anderson's own representations indicate that he failed to pursue administrative remedies with respect to the alleged actions of Officer Whitaker and Lieutenant Posey.  The Court, therefore, will dismiss without prejudice Anderson's claims against these two defendants.

There is, however, a genuine factual dispute regarding whether Anderson properly and fully exhausted his administrative remedies with respect to the other three defendants.  Indeed, Anderson has consistently maintained that he filed his sensitive administrative remedy request directly with the BOP's Mid-Atlantic Regional Office in August of 2019, and, in that request, complained about Officer Fuson, Officer Gabbard, and Lieutenant Chaney.  [Record No. 1 at 3-7]  Then, in January of 2020, when Anderson had not received a response, he followed up with the BOP's Central Office.  [*See id.*]  That office, however, rejected his submission and directed him to initiate his staff misconduct claims back at the institutional level, which Anderson contends he did with respect to his claims against Officer Fuson, Officer Gabbard, and Lieutenant Chaney.  [*See id.*]

The defendants acknowledge Anderson's version of events but suggest that, even if his representations are true, he waited too long to appeal his sensitive administrative remedy request to the BOP's Central Office.  The defendants argue that, assuming Anderson submitted his sensitive administrative remedy request to the BOP's Mid-Atlantic Regional Office in mid-August of 2019, as he claims, he should have received a response within 60 days.  [*See* Record

No. 32-1 at 15 (citing 28 C.F.R. § 542.18).]  When Anderson did not receive a response, the defendants argue that he should have promptly filed an appeal with the BOP's Central Office. Instead, the defendants contend that Anderson waited until early 2020, which "cannot be considered reasonable" and demonstrates that "he was not diligent in pursuing available remedies."  [Record No. 32-1 at 15]

It is not clear from the record, however, that Anderson's submission to the BOP's Central Office was untimely.  After all, even if the defendants are correct that Anderson should have considered the absence of a response from the BOP's Mid-Atlantic Regional Office to be a denial at that level sometime in October of 2019, federal regulations gave him time to put together and submit his appeal to the BOP's Central Office.  *See* 28 C.F.R. § 542.15(a).  Plus, Anderson's timeframe for doing so could have been extended for a variety of reasons.  *See id.* For example, the regulations specifically provide that one valid reason for a delay is "an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal."  28 C.F.R. § 542.14(b).  That is relevant here because the defendants filed a memorandum from Anderson's case manager which notes that he was transferred out of USP – McCreary in early December of 2019 and, as a result, he did not have full access to his legal material until late January of 2020 after he arrived at USP – Atwater. [Record No. 32-3 at 53] Shortly thereafter, Anderson filed his appeal with the BOP's Central Office, which rejected his submission and directed him to initiate his staff misconduct claims back at the institutional level.  [*See id.* at 45.] Anderson claims he complied, although the status of those subsequent administrative remedy requests is unclear.  Given these circumstances, there is at least a genuine factual question concerning whether Anderson properly and fully

exhausted his administrative remedies with respect to his claims against Officer Fuson, Officer Gabbard, and Lieutenant Chaney.

## B.  The Defendants' *Ziglar*-Related Argument

The Court also cannot resolve based on the current state of the record whether Anderson's Eighth Amendment claims against these three defendants are cognizable under the Supreme Court's decision in *Ziglar*, 137 S. Ct. at 1843.  To make that decision, the Court must not only determine whether this case presents a new context that "is different in a meaningful way from previous *Bivens* cases," it must also weigh whether special factors counsel hesitation in recognizing a new *Bivens* claim.  *See id.* at 1859-60.  This will likely require consideration of whether alternative processes for seeking relief, such as the administrative remedy process, were functionally available to Anderson with respect to his claims against Officer Fuson, Officer Gabbard, and Lieutenant Chaney.  *See id.* at 1858.  And this remains an unsettled issue at this early stage in the litigation given the limited record before the Court, outstanding questions regarding why the BOP's Central Office promptly rejected Anderson's appeal, and the status of his subsequent administrative remedy requests regarding his claims against the three prison officials in question.  Thus, the Court will not dismiss Anderson's claims against Officer Fuson, Officer Gabbard, and Lieutenant Chaney at this time, although it will allow the defendants to renew their *Ziglar*-related argument at a later stage of the proceedings.

## C.  The Defendants' Request for Summary Judgment

Finally, the Court will not grant the defendants request for summary judgment on the merits of Anderson's claims, based on the current record.  In certain circumstances, a district court may resolve a motion for summary judgment before discovery has taken place.  But "[t]he general rule is that summary judgment is improper if the non-movant is not afforded a

sufficient opportunity for discovery." *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996); *see also Alspaugh v. McConnell*, 643 F.3d 162, 166-67 (6th Cir. 2011).  In fact, if the non-movant makes a timely and properly-supported discovery request, a "district court's entry of summary judgment without permitting him to conduct any discovery at all will constitute an abuse of discretion." *Vance*, 90 F.3d at 1149.

Here, in support of their dispositive motion, the defendants immediately filed dozens of pages of material into the record, including three sworn declarations, a memorandum prepared for the BOP's files, several completed forms related to the use of restraints in this case, and numerous inmate history and administrative grievance records. [*See* Record No. 32-1 through No. 32-4.] The defendants also filed, under seal, multiple videos with surveillance footage regarding the alleged incident in question.  [*See* Record No. 35.] But the defendants submitted this evidence on the front end, without actually engaging in any discovery, and Anderson has filed multiple discovery-related requests.  Indeed, Anderson is seeking the production of documents and has filed at least two motions to compel the disclosure of additional video security footage which he claims will support his own version of events. [Record Nos. 38, 39, 42]  While the Court understands there can be challenges associated with the discovery process, particularly in a case where one of the parties is incarcerated and proceeding without a lawyer, that process is an important part of civil litigation, and it can often assist the parties and the Court move toward a resolution of the matter.  Given the Sixth Circuit precedent on point and Anderson's discovery-related requests, the Court will not grant

the defendants' request for summary judgment at this time, although they are free to renew their motion at a subsequent stage of the litigation.[1]

## III.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1.      The defendants' motion to dismiss or, in the alternative, for summary judgment [Record No. 32] is **GRANTED** in part and **DENIED** in part.

2.      The defendants' motion is **GRANTED** to the limited extent that Anderson's claims against Officer Whitaker and Lieutenant Posey are **DISMISSED**, without prejudice, for failure to fully exhaust his administrative remedies with respect to his claims against these defendants.  Thus, the Clerk of the Court is directed to **TERMINATE** these two defendants from this action.

3.      The defendants' motion is **DENIED** in all other respects at this time, although they are free to renew their motion at a subsequent stage of the litigation.

4.      Pursuant to 28 U.S.C. § 636(b), this matter is referred to a United States Magistrate Judge to conduct all further pretrial proceedings, including overseeing discovery

---

[1] The Court reaches this conclusion even though the defendants have also invoked qualified immunity.  [*See* Record No. 32-1 at 19-20]  The Sixth Circuit has made it clear that "it is not proper to grant summary judgment without giving [the plaintiff] an opportunity to engage in discovery merely because the . . . defendants asserted qualified immunity as a defense." *Alspaugh*, 643 F.3d at 168.  While the Court scrutinizes a complaint to determine whether the plaintiff alleged a violation of a clearly established constitutional right, if further fact-finding is required to determine the matter, then the summary judgment motion is properly denied. *See id.*; *see also Evans-Marshall v. Bd. of Educ. Of Tipp City Exempted Village School Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (noting that it is "difficult for a defendant to claim qualified immunity on the pleadings before discovery and before the parties (much less the courts) know what is being balanced against what") (Sutton, J., concurring).

and preparing proposed findings of fact and recommendations on any future dispositive motions.

     5.     The Clerk shall assign this matter to a United States Magistrate Judge pursuant to standing orders of the Court.

     Dated: April 14, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky