# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### SOUTHERN DIVISION
### LONDON

| | | |
|---|---|---|
| **DARNELL ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 6:20-cv-00118-DCR-MAS** |
| | ) | |
| **A. FUSON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Darnell Anderson ("Anderson") filed this action against five employees of USP McCreary, claiming violations of his Eighth Amendment right and seeking damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 288 (1971), from an incident at USP McCreary on August 11, 2019. [DE 9 (Amended Complaint)]. Defendants previously filed a Motion to Dismiss on February 1, 2021. [DE 32]. The Court granted the motion in part, dismissing the claims against Defendants Posey and Whitaker because Anderson failed to exhaust his administrative remedies with respect to those claims. [DE 52, Page ID# 958-59]. The Court denied the motion with respect to the claims against Defendants Fuson, Chaney, and Gabbard (collectively, "Defendants"), however, finding that there were genuine factual questions as to whether Anderson fully exhausted his administrative remedies. [*Id*. at Page ID# 959-60]. Additionally, the Court also determined that it could not yet resolve whether Anderson's claims against Defendants should be dismissed because it presents a new *Bivens* context, citing the early stage in the litigation and the lack of discovery. [*Id*. at Page ID# 961].

Discovery in this case has concluded, and Defendants again move to dismiss the remaining claims, or, in the alternative, for summary judgment. [DE 158 ("Motion for Summary

Judgment")]. Defendants assert that recent Supreme Court precedent, *Egbert v. Boule*, --- U.S. ---, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022), mandates dismissal. Additionally, Defendants again assert that the remaining claims should be dismissed because Anderson failed to exhaust his administrative remedies. Chief Judge Reeves referred this matter to the undersigned for a report and recommendation. [DE 52]. Anderson having failed to respond to the motion to dismiss and the deadline to do so having since passed, this matter is now ripe for review.

## I.     FACTUAL BACKGROUND

The District Court previously set forth the facts of this case in its Memorandum Opinion and Order on Defendants' February 1, 2021, Motion to Dismiss, which are as follows:

> Anderson alleges that, on August 11, 2019, Officer Fuson escorted him to a cell in the special housing unit (SHU) at USP – McCreary. [*See* Record No. 9 at 2 (citing Record No. 1).] He asserts that he told Fuson that he was afraid of the other inmate in the cell because that inmate had been involved in several fights with prior cellmates. [*See* Record No. 1 at 4.]. Anderson then claims that he refused to enter the cell, but Officer Fuson pushed him inside and closed the door. [*See id.* at 5.] Officer Fuson and two of his colleagues, Officer D. Gabbard and Lieutenant L. Chaney, then allegedly sought to remove the restraints from Anderson's wrists, but he "refused to submit." [*Id.*] Anderson says that Officer Gabbard then tried to grab him through the food tray slot in the cell door but was unable to do so. [*Id.*]
>
> At this point, Anderson claims that the officers opened the cell door and pulled him out. [*Id.*] Anderson alleges that Lieutenant Chaney then "whispered to [him] that 'this is what happens to people who file on my officers,' a reference to several complaints that [Anderson] had filed against officers in the SHU." [*Id.*] According to Anderson, Officer Gabbard "fabricated an incident report to allege that [Anderson] assaulted him," and, as a result, the officers moved him to a different cell and placed him in four-point restraints for several hours. [Record No. 9 at 2-3] Anderson states the restraints were too tight, causing him shortness of breath and an anxiety attack. [*See id.* at 3] Nevertheless, Anderson contends that the officers kept him in the restraints for at least seven hours. [*See id.*]
>
> Anderson then says that two other prison officials, Officer Whitaker and Lieutenant Posey, entered his cell and ordered him "to lay on the bed so that his leg restraints could be removed." [*Id.*] Anderson, however, claims that he was physically unable to lay down "due to the tightness of the weight chain," which the officers refused to loosen. [*Id.* at 9] Anderson then alleges that Officer Whitaker approached him, told him "this is going to hurt," grabbed him by his upper body, and placed him on the bed. [*Id.*] Anderson states that "this process was the most excruciating pain

throughout this entire ordeal" and that he "felt like razor-wire [was] tearing into his skin." [*Id.*] Anderson then contends that he "was forced to endure this exact same pain all over again upon being lifted from the bed." [*Id.*] Anderson also alleges that, during his time in restraints, he could not retrieve his evening meal and was unable to use the toilet, causing him to urinate on himself. [*See id.*; *see also* Record No. 1 at 14).]

Anderson states that he filed a sensitive administrative remedy request just one week later, complaining about the "staff misconduct" committed by Officer Fuson, Officer Gabbard, and Lieutenant Chaney. [Record No. 1 at 3; No. 1-5 at 2] He claims he filed this request directly with the Bureau of Prisons' (BOP's) Mid-Atlantic Regional Office, consistent with the federal regulations governing sensitive issues. [*See* Record No. 1 at 3-4 (citing 28 C.F.R. § 542.14(d)(1)).] Anderson, however, asserts that he did not receive a response. Thus, Anderson claims that, in January of 2020, shortly after he was transferred from USP – McCreary to USP – Atwater, he filed an appeal with the BOP's Central Office, but that office rejected his submission and directed him to initiate his staff misconduct claims at the institutional level. [*See* Record No. 1 at 6; No. 1-7 at 2; No. 1-9 at 2; No. 9 at 4] While Anderson argues that this decision was incorrect, he says he nevertheless continued to pursue his administrative remedies, both back at his prison and through submissions to other BOP officials. [*See* Record No. 1 at 3-7; No. 1-5 at 2-6; No. 1-6 at 2; and No. 1-8 at 2-3] The status of these subsequent administrative remedy requests, however, is unclear.

Anderson eventually filed this lawsuit against Officer Fuson, Officer Gabbard, Lieutenant Chaney, Officer Whitaker, and Lieutenant Posey. [Record No. 1; No. 9]. Anderson argues that each of the named defendants acted "maliciously and sadistically" [Record No. 1 at 12]. And violated his right under the Eighth Amendment. [Record No. 1 at 12; No. 9 at 4].

[DE 52 at Page ID# 955-56]. The District Court denied the motion to dismiss as to all claims, except the District Court granted the motion to dismiss as to Anderson's claims against Officer Whitaker and Lieutenant Posey, finding that Anderson did not fully exhaust his administrative remedies with respect to his claims against these defendants. [DE 52]. Following that decision, the parties engaged in discovery and a copious motion practice, most of which was initiated by Anderson. The factual narrative as previously described by the District Court has not changed.

## II.   DISPOSITIVE MOTION STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). In

assessing a motion to dismiss under Rule 12(b)(6), the "court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true to state a claim for relief that is plausible on its face.'" *Id.* (quoting *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012)). Anderson is a prisoner proceeding without an attorney, so the Court reads his complaint liberally and "accept[s] as true all non-conclusory allegations in the complaint and determine[s] whether they state a plausible claim for relief." *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (quoting *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009)).

Defendants move to dismiss the complaint and for summary judgment in the alternative, and they attach and rely upon materials outside of the pleadings. [*See* DE 158; DE 158-1, 2, 3]. Thus, the Court treats Defendants' motion as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) (requiring that, in a motion to dismiss under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one of summary judgment under Rule 56"); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (stating that plaintiff is on notice that summary judgment is being requested where defendants move both to dismiss and for summary judgment in the alternative).

Summary judgment is appropriate if no genuine disputes of material fact exists and if the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989)). Once the initial burden is met, the nonmovant must

come forward with "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The nonmovant may not rest on his pleadings and must instead present affirmative evidence to support his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986). In considering a motion for summary judgment, the Court views all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986).

### III.   ANALYSIS

Defendants assert two bases for dismissal of Anderson's claims. First, Defendants argue Anderson's claims must be dismissed because they present a new context for a *Bivens* action and there are special factors counseling against extending a *Bivens* remedy to that context. Second, Defendants assert Anderson's claims must be dismissed because he failed to fully exhaust his administrative remedies. The undersigned agrees with both grounds.

### A.   AVAILABILITY OF A *BIVENS* REMEDY UNDER *EGBERT*

Defendants argue that Anderson's Eighth Amendment claims based on his allegations of excessive force, including the allegation that Defendants fabricated disciplinary charges against him to place him in restraints, must be dismissed because they present a new context for a *Bivens* action and there are special factors counseling against extending a *Bivens* remedy to this context. On this point, Defendants rely heavily on a recent United States Supreme Court case, *Egbert v. Boule*, --- U.S. ---, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022).

In certain contexts, a plaintiff may recover damages for a constitutional violation by a federal actor under the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 (1971). In that case, the Supreme Court held that, "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*,

137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 402 U.S. at 397). The Court acknowledged that the Fourth Amendment did not expressly provide for a damages remedy. *Bivens*, 403 U.S. at 396. Nonetheless, because Congress had not explicitly declared "that person's injured by federal officer's violation of the Fourth Amendment may not recover money damages from agents" and because the case "involved no special factors counseling hesitation in the absence of affirmative action by Congress[,]" the Court concluded that it could authorize such a remedy under general principles of federal jurisdiction. *Id*. at 396–97.

However, including *Bivens*, the Court has approved of an implied damages remedy under the Constitution itself in only three instances: (1) where federal agents searched a private residence without probable cause and in the process manacled the plaintiff and threatened his family in violation of the Fourth Amendment, *Id.* at 389, 296; (2) where a congressman terminated an employee because she was a woman in violation of the Fifth Amendment Due Process Clause, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where federal prison officials displayed deliberate indifference by failing to treat a prisoner's asthma in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, *Carlson v. Green*, 446 U.S. 14, 19 (1980).

Since fashioning these new causes of action, the Court has "come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" *Egbert*, 142 S. Ct. at 1802 (quoting *Hernández v. Mesa*, 140 S. Ct. 735, 741 (2020)) ("At bottom, creating a cause of action is a legislative endeavor."). As a result, over the past 42 years, the Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations." *Id*. at 1799 (collecting cases). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020). The Supreme

Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Now, after decades of demarcating the *Bivens* doctrine, the Court must employ the two-step test under *Ziglar* to determine whether an implied damages remedy for alleged constitutional misconduct by federal officials is available.  First, the Court must determine whether the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of *Bivens*."  *Hernández*, 140 S. Ct. at 743 (citations omitted).  A "new context" is understood broadly as "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court.'" *Id*. (quoting *Ziglar*, 137 S. Ct. at 1859).  A case might differ in a meaningful way because of "the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider[,]" for example.  *Ziglar*, 137 S. Ct. at 1860.

Second, if the Court concludes that a claim arises in a new context, then it must consider whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."  *Id*. at 1857 (quoting *Carlson*, 446 U.S. at 18).  At this step, the Court "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id*. at 1857–58.  "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] the [C]ourt[] must refrain from creating [it]."  *Ziglar*, 137 S. Ct. at 1858.  "Put another way, 'the most important question is who should decide whether to provide for a damages remedy, Congress

or the courts?" *Egbert*, 142 S. Ct. at 1803 (quoting *Hernández*, 140 S. Ct. at 750). "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Id.* (citation omitted) (citing *Ziglar* 137 S. Ct. at 1857–58). *See also Egbert*, 142 S. Ct. at 1803 ("'[E]ven a single sound reason to defer to Congress' is enough to require a court to refrain from creating such a remedy." (quoting *Nestlé USA, Inc. v. Doe,* 141 S. Ct. 1931, 1937 (2021) (plurality opinion))).

### 1.   <u>Anderson's claims present a new *Bivens* context.</u>

In this case, Anderson's Eighth Amendment claims based on his allegations that officers used excessive force against him, including the allegation that Defendants fabricated disciplinary charges against him to place him in restraints, presents a context that is new and meaningfully different from those previously recognized by the Supreme Court as cognizable under *Bivens*. Although Anderson's claims, like those in *Carlson*, are based on the Eighth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández*, 140 S. Ct. at 743. "Plainly, a prisoner's claim that excessive force was used against him by a prison staff is a different context than the claim in *Carlson* of deliberate indifference to a prisoner's medical needs." *Morel v. Dep't of Justice*, No. 7:22-015-DCR, 2022 WL 4125070, at *5 (Sept. 9, 2022). *See also Hower v. Damron*, No. 2105996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) ("[Plaintiff's] Eighth Amendment claim presents a new context because it involves Damron's alleged harassment and threats and Streeval's alleged failure to protect him from the same, whereas *Carlson* involved the alleged failure to provide adequate medical care to a prisoner." (citing *Carlson*, 446 U.S. at 16 n.1)). The official actions in this case and in *Carlson* are significantly different, so this case seeks to extend *Carlson* to a new context. Given that even a "modest extension" of a prior judicially

implied remedy constitutes a new context, *Ziglar*, 137 S. Ct. at 1864, the first step of the *Ziglar* test is met.

> **2.    Special factors counsel against creating a new *Bivens* cause of action in this context.**

Anderson's claims also fail under *Ziglar's* second step, as there are several special factors that counsel against extending the *Bivens* remedy to this new context.  *Ziglar*, 1367 S. Ct. at 1857. *See also Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021) ("The Supreme Court . . . has explained that the separation of powers should be a guiding light . . . and has told us that we must not create a cause of action if there's 'a single sound' reason to leave that choice to Congress." (quoting *Nestlé USA, Inc.*, 141 S. Ct. at 1937)).

First, "legislative action suggesting that Congress does not want a damages remedy" counsels hesitation to extend the *Bivens* remedy in this case.  *Ziglar*, 137 S. Ct. at 1865. Specifically, Congress passed the Prison Litigation Reform Act of 1995 some 15 years after *Carlson* was decided.  *Id*.  The Act "made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id*. (citing 42 U.S.C. § 1997e).  With the passage of this legislation, Congress presumably "had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs[,]" yet "the Act itself does not provide for a standalone damages remedy against federal jailers." *Id*.  As *Ziglar* recognized, this alone may suggest "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id*.

Second, an alternative remedial structure exists in the form of BOP regulations.  *See Egbert*, 142 S. Ct. at 1807 (noting that a remedial scheme created by "Congress *or the Executive*" which those branches find sufficient to secure an adequate level of deterrence precludes the Judiciary from superimposing a *Bivens* remedy (emphasis added)).  For federal inmates, the BOP's

Administrative Remedy Program (ARP) "provides a ready and viable mechanism to challenge alleged misconduct by staff." *Morel*, 2022 WL 4125070, at *6 (citing *Correctional Serv's Corp. v. Malesko*, 534 U.S. 61, 61 (2001)); 28 CFR § 542.10 (2001) (explaining that the ARP provides "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement"). Even assuming the ARP does not provide the complete relief Anderson seeks or that it would leave unaddressed a wrong Anderson asserts, its existence demonstrates that political branches other than the Judiciary are better equipped to create a damages remedy in this new context. *See Egbert*, 142 S. Ct. at 1804 ("[T]he relevant question is not whether a *Bivens* action would 'disrupt[t]' a remedial scheme, or whether the court 'should provide for a wrong that would otherwise go unaddressed[.]' Nor does it matter that 'existing remedies do not provide complete relief. Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether the existing remedies 'should be augmented by the creation of a new judicial remedy.'" (citations omitted)). As such, the ARP alone is reason enough to decline to infer a new *Bivens* claim in this context. *Egbert*, 142 S. Ct. at 1804. And "courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*." *Morel*, 2022 WL 4125070, at *6 (collecting cases).

In addition to the BOP's inmate grievance program, the Federal Tort Claims Act, 28 U.S.C. § 2670, *et seq*. ("FTCA"), provides another alternative remedial structure. The FTCA "is a limited waiver of the federal government's sovereign immunity permitting an action against the United States for negligent or intentional acts committed by its employees during the course of their employment." *Morel*, 2022 WL 4125070, at *6 (citing 28 U.S.C. § 1346(b)(1)). Like the ARP

regulations, the existence of the FTCA counsels against extending the *Bivens* remedy to this context.

Third, extending a *Bivens* claim to this prison-based context risks unduly interfering with prison administration under separation-of-powers principles. "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources." *Callahan*, 965 F.3d at 524 (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). "Given the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial[.]'" *Id*. (quoting *Safley*, 482 U.S. at 85). In other words, separation-of-powers principles counsel against the judiciary creating new causes of action for prison-based claims, like the ones Anderson asserts here. *Id.*

In sum, Anderson's claims involve alleged excessive force by federal prison officials, which present a context that is new and meaningfully different from those previously recognized by the Supreme Court as cognizable under *Bivens*, the closest of which appearing in *Carlson* some 30 years ago. Moreover, the considerations discussed above offer plenty of reasons to "hesitate" about extending a *Bivens* remedy to Anderson's claims. *Ziglar*, 137 S. Ct. at 1858. The Court must therefore decline to extend a new *Bivens* action for Anderson's excessive force claims. And because the Court finds that *Bivens* does not provide a monetary remedy for Anderson's Eighth Amendment claims based on his allegations of excessive force, his Complaint fails to state a claim for which the relief he seeks may be granted. The undersigned thus recommends the District Court grant Defendants' Motion for Summary Judgement [DE 158] and dismiss Anderson's remaining claims.

**B.    ADMINISTRATIVE EXHAUSTION**

The undersigned's recommendation that the District Court dismiss Anderson's remaining claims because *Egbert* and *Ziglar* require the Court to decline to extend a *Bivens* remedy to this

context is dispositive of this case. In the interest of complete consideration of Defendants' arguments, however, the Court also recommends dismissal of Anderson's remaining claims because he has failed to show that he exhausted his administrative remedies.[1]

Defendants argue that Anderson's claims must be dismissed because he failed to exhaust his administrative remedies prior to filing his lawsuit. The statutory language of the PLRA unequivocally requires that "[n]o action shall be brought with respect to prison conditions under . . . any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). *See also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted); *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (the exhaustion requirement is a "strong one"); *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006).

The BOP's Administrative Remedy Program requires a federal prisoner to follow a four-step process to administratively exhaust his remedies. 28 C.F.R. §§ 542.10-542.19. First, the inmate must seek informal resolution of any issue with staff. 28 C.F.R. § 542.13. If a matter cannot be resolved informally, the prisoner must file an Administrative Remedy Request Form

---

[1] The undersigned recognizes the general principle that federal courts should decline to address alternative grounds of dismissal when no cause of action exists, especially in cases, like this one, where precedent can easily resolve *Biven's* applicability. *See Elhady*, 18 F.4th 880, 884–85 ("Plaintiffs like Elhady often have no cause of action unless we extend *Bivens*. And if there is no cause of action, courts should stop there. After all, Article III bars federal courts from giving 'opinions advising what the law would be upon a hypothetical state of facts.'"). However, the undersigned addresses Defendants' alternative argument to provide an alternate recommendation to which the District Court may turn in the event it rejects the first recommended basis of dismissal.

(form "BP-9"). *See* 28 C.F.R. §§ 542.14(a). If the prisoner is not satisfied with the Warden's response, he must use a BP-10 Form to appeal to the applicable Regional Director. *See* 28 C.F.R. §§ 542.15. If the prisoner is not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General Counsel. *See* 28 C.F.R. §§ 542.15. *See also* BOP Program Statement 1300.16. At each of these steps, the prison officials have strictly proscribed times by which to respond to the grievance. *See* 28 C.F.R. § 542.18. At any level, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford*, 548 U.S. at 90.

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 212. "When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)). Once an inmate makes "some affirmative efforts to comply with the administrative procedures," the Court will analyze "whether an inmate's efforts to exhaust were sufficient under the circumstances." *Napier*, 636 F.3d at 223-24. Summary judgment is appropriate where "a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

On this record, the Court finds that Anderson did not exhaust his administrative remedies as required by the PLRA prior to filing this case. Anderson indicated in his Amended Complaint that he submitted remedy requests at the Regional Director and Office of General Counsel levels

13

on August 18, 2019, and February 2, 2020, respectively. [DE 9, Page ID# 99]. He also provided details concerning these submissions in his deposition testimony. Specifically, Anderson stated that he filed a "sensitive request" BP-9 on August 18, 2019. [DE 158-1, Page ID# 1751]. If true, the regional office would have had up to 60 days in which to submit its response. 28 C.F.R. § 542.18. Defendants claim the regional office never received a B-9, and Anderson acknowledged in his deposition that he did not receive a response from the BOP regional office within 60 days. [DE 158-1, Page ID# 1752].

However, Anderson acknowledged in his deposition that, despite not receiving a response to the sensitive submission, he did not take further action until January 2020, when he finally followed up on the sensitive submission. [*Id*. at Page ID# 1752–53]. The BOP's Administrative Remedy Program requires that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. This means that once mid-October 2019 came and went, Anderson should have assumed that his BP-9 was denied, and if he wished to pursue his administrative remedies, he had to use a BP-10 Form to appeal to the applicable Regional Director. Anderson failed to do so in the timeframe required by the regulation and offers no excuse for his delay.

Failure to exhaust is an affirmative defense upon which defendants bear the burden. A defendants' initial burden is satisfied by showing that there was a generally available administrative remedy that the prisoner did not exhaust. *Albino v. Baca*, 747 F.3d 1152, 1172 (9th Cir. 2014). Once the defendants put forth evidence of a valid administrative process, a plaintiff must present evidence to rebut the availability of that remedy to defeat the defendants' motion for summary judgment. *Napier*, 636 F.3d at 225–26. Anderson, in failing to respond to the Motion for Summary Judgment, has not sustained this burden. His lack of response on his failure to

exhaust dooms his claims. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009) (Sutton, J., dissenting) ("No doubt, we expect less of pro se litigants than we do of counseled litigants - and appropriately so. But those modest expectations are not non-existent. '[P]ro se parties must still brief the issues advanced with some effort at developed argumentation.'") (quoting *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003)).

Accordingly, the undersigned alternatively recommends the District Court grant Defendants' Motion for Summary Judgment [DE 158] and dismiss Anderson's remaining claims on the grounds that he failed to exhaust his administrative remedy prior to filing his civil action as required by 42 U.S.C. § 1997e(a).

## I.    CONCLUSION

For the reasons discussed above, the Court **RECOMMENDS** as follows:

1. That the District Court **GRANT** Defendants' Motion for Judgement on the Pleadings, or in the Alternative for Summary Judgment [DE 158]; and

2. That the District Court **DENY AS MOOT** the following motions:

   a. Anderson's Motion to Determine Sufficiency of Answer or Objection [DE 150];

   b. Anderson's Motion for Extension [DE 180];

   c. Anderson's Motion for Waiver of Fees [DE 188];

   d. Anderson's Motion to Amend and/or Supplement [DE 189]; and

   e. Anderson's Motion to Appoint Counsel [DE 190].

The undersigned enters this Memorandum Opinion pursuant to 28 U.S.C. § 636(b)(1)(A). Within fourteen (14) days after being served with a copy of this Memorandum Opinion, either party may appeal this decision to the presiding District Judge pursuant § 636(b)(1)(A) and Fed. R. Civ. P. 72(a).

Entered this 26th day of January, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY